Edie Cunningham of the Federal Defender's Office, on behalf of Mr. Begay, I'd like to reserve three minutes. Would you put the microphone down? Yes, Your Honor. Thank you. If possible, I'd like to reserve three minutes. Is that better? Much better. Thank you. Both convictions must be reversed because of the incomplete second-degree murder instruction. Alternatively, the 924C conviction must be reversed because second-degree murder can be committed unintentionally. Also, a redetermination of restitution is necessary because of the inadequate record. I'll start with the second-degree murder instruction. The second-degree murder instruction was plainly incomplete, given the evidence presented. The jury did not have the information it needed to determine whether Mr. Begay was guilty of second-degree murder. Two established legal principles make this plain error. The first is that evidence Is there anything with this plain error analysis, is there anything we factor in that, in fact, nobody asked for the instruction you now think ought to be given? Your Honor, our argument is that the second-degree instruction was incomplete. And, yes, there are cases where the defendant failed to request the instruction and the Court found plain error. I'll point the Court to two of those cases, Paul and the one addressed in the 28J, No. 51, Diehl, also called King, but Diehl is the relevant case that we're dealing with. There were two cases there. Also Iguan, but if I could explain the legal principles, evidence that the defendant may have acted out of passion or quarrel or some sort of emotional, irrational state negates malice. I understand your argument. My worry is that if one is trying to negate malice, someone ought to say something about it to the jury and somebody ought to ask for an instruction that suggests that it will. And if one doesn't, then one wonders at that point whether the Court is taking away from the defendant his right to proceed to trial on his own theory. Your Honor, the defendant here, even though I don't think it was necessary, the defendant here presented alternative theories. The first was that it was not Mr. Begay who fired the shot. Well, that seemed to be the big theory. Yes, it was. I didn't really see any other alternative. Well, on page 6 of the reply brief, the parts of the closing argument of the alternative theory are cited because he said, A, the government didn't prove that it was Mr. Begay who fired the shot, and, B, the government didn't prove malice of forethought. Alternative defenses are permitted, even completely inconsistent ones, and deal. The question you're right about that. The question in my mind, however, is counsel has a right to go to the jury on the theory he wants, and there's no question there's evidence in there that there might have been a fight between he and his girlfriend. No question about that. But it seemed as if counsel was suggesting that is not a worry to me because I don't want you to concentrate on that. I want you to concentrate on the fact I didn't do it, and, number two, I'm not even going to put in a jury instruction about that because I don't want you to focus on that. Your Honor, there's no indication that counsel had any idea that this clarification is necessary for the second degree instruction. There's no discussion about this issue. And it is the Court's duty to instruct on the law and on the essential elements such that the jury can determine whether the defendant's conduct fits the statute. Here, the jury just did not have the information it needed. The evidence, as Your Honor pointed out, was clear. Alvar Rosten is pretty clear. The prosecution is required to negate this heat of passion, but only if the issue is properly presented in a homicide case. Your Honor. Citing, at that point, the other case which had to deal with this particular issue. So here, we're again stuck with what counsel is really doing. Your Honor, if I could respond, it is the evidence that raises the issue, not the defendant. And, again, I think the Diehl case is instructive and the Cantero case is instructive because of the evidence. Tell me where does it say it's the evidence rather than, I mean, we're talking about properly presented. In this case, the defendant properly presented. He didn't do it. And asked for instructions that would, again, go along with that theory. The proper presentation wasn't simply because there's some evidence somewhere down there that you can find something. It may not have gone along with the theory. How do you deal with a case of U.S. v. Anderson, a Ninth Circuit case that said, Well, Your Honor, first of all, the defendant did make an argument because he argued that malice wasn't proven, and malice cannot be proven if there is evidence of passion that the government has not disproven. beyond a reasonable doubt. And, second, Anderson had to do with the failure to give a lesser-included instruction. We're not talking about that here. We're talking about the failure to inform the jury of what it needed to know to evaluate the essential element of second-degree murder. That's malice. And under Combs, Harvey, Aguan, Diehl, Paul, the Court has a duty to give the jury the information it needs to know about the elements so that they can decide whether the defendant is guilty of the crime. And here the defense counsel apparently thought he'd done that because the argument you cite in the reply brief and just read from refers specifically to the instructions given to the jury with regard to the elements. And he says, second, the defendant killed Roderick Benn with malice aforethought, and he makes his argument based on that. There was no malice aforethought. So what makes that the instruction inadequate if defense counsel argued straight from it? Your Honor, there's no indication that defense counsel realized a clarification of the second-degree of the malice instruction is necessary when there's evidence of passion raised. There's no conceivable reason he wouldn't say, look, we don't think Roderick Benn did it, but the government argues that he did it. And if, you know, if he did it, they haven't met this definition of malice because there's the only evidence presented. The only evidence presented that the gay shot Mr. Benn was that he did it in the midst of a heated, passionate argument about infidelity. The jury had no idea what to do with that evidence. The evidence is what it is. The jury has to know how to evaluate it under Combs, Deal, Eguan, Harvey, Paul, and they just didn't know what to do with that. And that was a very manifest injustice because if the jury had known that evidence of passion and argument negates malice, there's a very good chance they would have acquitted of second-degree murder. And it's not an injustice to reverse this conviction and send it back. All that will happen is that the jury will be properly instructed. If the government wants a lesser included instruction on voluntary manslaughter, they are entitled to it and they can ask for it. I contend that there's no indication that the Court or the parties had read the relevant case law and understood that there was a clarification that was necessary given the evidence. And I'd like to reserve the rest of my time, if possible. Roberts. May it please the Court. My name is Carla Hodes-Delor, representing the government. The district court here did not err, let alone commit plain error, when it instructed the jury on second-degree murder and did not give a voluntary manslaughter instruction. The instruction the district court gave on second-degree murder, and specifically malice, was correct and complete. As this Court has held in the United States v. Contero case, sudden quarrel or heat of passion are not essential elements of voluntary manslaughter, and they need not be proven beyond reasonable doubt. So the district courts They're not elements, but if raised, they have to be the state bears a burden to suggest that it wasn't that. Isn't that true? That is correct. Now, I guess counsel is arguing, and somewhat effectively, that they gave an alternative theory to the jury, and that the court has, if you will, a duty to give the instructions that fit the evidence, and there was some evidence that he was arguing with his girlfriend at the time about her infidelity, and therefore had a duty to put that instruction in even though nobody asked for it. How do you respond to that? How do I respond? First, I have many responses. First of all is this issue was not properly presented by the defendant, and the defendant did not request this instruction. And this is the key distinguishing mark between this case and the other cases before it. The defendant proceeded on the theory that he did not do it. His alternative theory was the government didn't meet its burden of proving the elements. His argument was not that I did it, but I did not do it with malice, or I did it with a lesser intent. He never argued that. He never argued he did it as a result of a sudden quarrel or heat of passion. And for the court to sua sponte, give that instruction when no one has requested it, would prejudice the defendant, because the defendant's entire theory of the case was that he didn't do it or the government didn't meet its burden. And the government's theory of the case is evidenced by its joint pretrial statement where he stated the defendant did not shoot Roderick Benn. In his opening statement that there was the government didn't prove the evidence to meet its burden. And in its cross-examination of witnesses, his whole theory was that someone else, namely Megan, the girlfriend, is the one who shot him. Asking witnesses about Megan's relationship with the victim, how she felt about the way he treated his mother, if Megan had a weapon. So it was clear this whole time the defendant was not arguing sudden quarrel or heat of passion. And then if you were to imagine the situation, that this evidence has been presented of an argument, which the government still doesn't contain is properly presented, nor does it contend that it was sufficient provocation that would cause a reasonable person to kill someone. But if, based on the evidence presented, the court, sua sponte instructed on this sudden quarrel or heat of passion, and let's pretend the jury then convicted on voluntary manslaughter. The defendant would be appealing that. And he would be arguing that the court erred in sua sponte giving this instruction because that was not its theory of the case. Its theory of the case was second-degree murder or acquittal. And by the court giving this instruction sua sponte and the jury convicting on voluntary manslaughter prejudiced them. Because if the court, if the jury were to find a voluntary manslaughter instruction, the defendant would come back and argue, well, obviously the government didn't provide, didn't prove second-degree murder. And because it didn't prove second-degree murder, it should have acquitted him. But now the court messed that up and gave the government a second chance at a instruction that we never requested and we never proceeded on. So we have prejudice to the defendant if the court were to have sua sponte given this instruction. Ginsburg. Well, let me tell you what worries me about this case. If we require the defendant to raise the heat of passion for the issue to be properly presented, wouldn't it improperly shift the burden to the defendant to disprove an element of a crime for which he has been charged? A second-degree murder requires killing with malice a forth. If a defendant kills in the heat of passion, malice is negated. Looking at the Supreme Court case of Mulaney v. Wilbur, the Supreme Court held that due process clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case. Is it your theory that it was not properly presented? Exactly. It is the government's theory this was not properly presented. And in addition to that, the defendant, even if there was – even though there was evidence of an argument, it was not properly presented and the defendant didn't proceed on that theory. And that's the key distinguishing thing. In Mulaney and in Licina and Quintero, all the defendants in those cases said, I did this, or it was an accident, but I didn't do it with malice. And they argued this alternative theory. And we do not have that at all here. He never argued the alternative theory of I did this as a result of heat of passion or sudden quarrel. And so for the court to then sua sponte, give this instruction, would have prejudiced the defendant. At the end of the day, we have a conviction for second-degree murder. And we didn't have perhaps a full exploration of the motivation for murder or the mens rea. There is evidence and was apparently argument by the prosecutor with regard to something that might be heat of passion. Defendant's counsel and defendant may have made a conscious decision to all or nothing. And I hear your argument with regard to that. But should we be concerned about the possibility that we now have somebody who has been convicted of second-degree murder who may well have acted in a way that otherwise would have fit within that heat of passion? I didn't see a lot of evidence with regard to what his motivation for killing the victim was. It didn't sound like he had a whole lot to do with the victim. Correct. Shouldn't that give us some concern? It should not give concern because the defendant specifically made the strategic choice to either proceed with the second-degree murder or the all or nothing. It could have requested, seeing that there was evidence of an argument, it could have requested an instruction on voluntary manslaughter. And the court could have evaluated whether it would have been sufficient to give it. The government still maintains that there was not sufficient evidence, there was not proper presentation of this argument to warrant the giving of the instruction and to speak to that. What causes the government to view this as a case that is properly second-degree murder as opposed to, say, voluntary manslaughter? Because the argument between the defendant and his girlfriend, it was an argument. There was testimony saying we've had this argument many times. Whenever we get drinking, we get in a fight, he talks about my infidelity. This is not the type of argument that would rise to the level of sufficient provocation that would cause a reasonable person to kill somebody. If that were the case, there would be a lot of couples, I'm sure, that would be On this case, it was to kill somebody else. I mean, one of the odd things about this is that the person sitting in the front seat is the one that's Exactly. And there was evidence and the girlfriend, Megan, specifically testified that the victim was not involved in this argument whatsoever. So there was clearly insufficient provocation that would rise to the level of the giving of this instruction. And on top of that, it wasn't properly presented. But what's the malice of forethought with regard to the victim? I mean, that's one of the puzzling things here. I hear what you're saying. And, indeed, if they've had a long, long fight, then, and she was in fear of being shot, and him shooting her is what you would expect, what happens more often? Instead, he winds up shooting this other guy. So what's the malice of forethought with regard to the other guy, to Ben? I cannot get into the defendant's mind. So I can only expect But you've been convicted of having malice of forethought. So malice of forethought toward whom? For what? Right. And that's the source of some concern, which is that if I look back at this, and maybe all of this comes out in an AIC claim on habeas or something, but I'm puzzled as to fight between these two, and that guy winds up dead, and it's not because he got a ricochet or something. It was plainly he was intentionally shot. Right. But it's hard to figure out the thought pattern. And the defense decides to focus on it wasn't him, he wasn't in the car. So as I look at what I can from the trial record, this really doesn't get played out very well. And, well, and the thing is, is that it was the defendant's, the defendant needed to raise that instruction and proceed on that instruction and ask for it, and he didn't. And so to now come back and now complain of it when he purposefully made that decision is giving the defendant another In terms of the debate or the trial process, I understand that completely. At the end of the day, I look here and say, gee, we've got somebody who's been convicted, and it's hard to understand not how that result came out of the trial, but whether that's the result that actually fits the facts as best we know it. Right. Now, your office made a judgment to prosecute for second-degree murder, not for something else. And I take that judgment to be in good faith, but because the trial didn't go that way, it's hard to look at the record. And for us to try to figure out what's the malice of forethought toward Ben. Right. And I hear that as the objection being raised by the defendant. The evidence is lurking there. That wasn't the focus of the trial. Now what do we do? Well, and then as the prosecutor argued in closing, you know, it's hard to get into the defendant's mind as to his thought process and what was going on. But the government sufficiently proved its case, and the defendant never asked for this voluntary manslaughter instruction. I see that I am well over time. We took you there. If you have something else you need to say, please do. I just wanted to make one brief comment. I appreciate the court allowing us to provide supplemental briefing on the second issue. Because of the opinion that was issued yesterday, obviously it is bigger than myself and will be needed to be reviewed by the department and the solicitor general, which can take some time. So I just ask that the court allow a sufficient amount of time to provide supplemental briefing. I'm thinking out loud. I'm thinking of proposing to my colleagues sequential briefings, so you're not trying to file at the same time. So we'll wind up having probably ask the defendant to go first. And I understand you're going to repeat a little bit what you've said, but we've now got this issue teed up with new authority. And then come back to the government and then a reply. Tell me a timeline for when you'd like that briefing to start. I think you've got a more institutional problem than she does. I have a more institutional problem. So if you're saying, look, I'm not going to be in a position to express the department's position for 60 days or 90 days, I mean, the reality is Mr. Begay is not going anyplace. Correct. So it's better to address this issue so that you've had enough time to develop it.  with other defender offices, because heaven knows there are a lot of cases that are teeing up this issue. So you guide us as to how much time we should. I would, and obviously I haven't talked with defense counsel, but I would think a minimum of 30 days for her to file a supplemental brief could be sufficient. She might need more time. I don't know. And then hopefully the 30 days, you know, if I have 30 days after that, hopefully we will have some guidance from the SG's office within 60 days as to how to adequately respond to this issue. I suspect you have no answer to this question, but if there's a possibility the SG's office will authorize filing a petition for a hearing on Bonk with regard to the decision that came out yesterday, we'll watch for that. And if it looks like it's useful simply to put this on hold for a time being, we will. And that might be the best course of action. I mean, obviously I can't speculate as to what the SG's going to authorize, but I think that would be the best course of action. Okay. All right. Thank you. Your Honor, a few points. The government noted in the Contero case, but mischaracterized what happened there. In Contero, the defendant argued that he didn't do it. The defendant argued that his little girl fell off a truck and that he had nothing to do with it. It was the government who argued that the little girl was killed in a rage when her father beat her in a rage. So that was a mischaracterization. The fact that Mr. Begay was principally arguing that it was not, he didn't fire the shot, does not matter. It was the evidence in the government's theory, just as in Contero, that Mr. Begay fired that shot in the midst of a passionate argument about infidelity. Also, on the issue of sufficient provocation, I submit that compared to what happened in Contero and Lucena, how could this not be sufficient? In Contero, it was a little 2-year-old girl who apparently could provoke rage in her father. I mean, how could that be? You ever had a 2-year-old girl? Yeah. Not real hard to understand. I've had two 2-year-old boys, but. Okay, close enough. It's probably not that hard to understand. But I submit that a long-time girlfriend's infidelity could drive someone over the edge. And the fact that they may have had this argument before is also not the point. They were in the midst of the argument when the shot was fired. And as Bordeaux points out, arguments can be rekindled. And Lucena also speaks to that as well, because that couple was fighting about the other one being too impatient. Now, it's hard to believe that was the first time they had ever had that argument. Also. Because the case didn't play out this way, I'm projecting. But I'm sitting there and I'm looking at the evidence. He's got a gun with him and he's talking about I'm tired of being called the bitch and so forth. Now, this doesn't really — it's hard to understand, but it really doesn't spring out as a sudden provocation kind of case. This sounds much more like something that's been weighing on him for a while. And I say that because it's not hard for me to understand how the district court isn't thinking of this on his own as a sudden provocation, heat of passion kind of response. It's not sensible. But it's — it's not the first time this has happened between the two of them. Now, why the other guy gets shot, I don't know. But — so what makes this case the kind of case that the district judge should on his own decide, you know, I ought to give this instruction, even though it's not what the defendants have asked me to do, because it really sounds to me like a heat of passion case? Well, Your Honor, the evidence was all over the place that they were having a good time. They were out drinking and partying and smoking meth all day. And then all of a sudden, you know, they got to the defendant's house at about 9.30 or 10. He went in to play games or something and came back out. And then all of a sudden, in this very drunk and irrational state, they start arguing about infidelity. So in that sense, it is sudden, because it all happened within a very short time span. And that argument can be rekindled. And I do — there was evidence. Megan told the detective that Randley was mad at her because she was fooling around not just generally, but with Mr. Ben. So they're all sitting in the car. Of course that's going to rekindle this situation. And there was also testimony that they were just arguing about her infidelities in general. But if he intended to shoot Megan, whatever intent, you know, whatever heat of passion he had towards Megan would transfer to Randley. So it was this sudden argument. They had all been having a good time together and all of a sudden start arguing and the shot is fired in the midst of the argument. And I'd also like to point out Clemen, which postdates Quintero and Licina and all of these cases, which says — Which one is this? Clemen. Clemen? Yes. It's a parole commission case from 1997. And the Court there said it really doesn't matter if there's sudden provocation. What matters is the defendant's mental state. And if the defendant is irrational and paranoid and extremely passionate and emotional, that negates malice because malice connotes this kind of cool, calm, collected, I'm just going to do this and I don't care. And as the government conceded repeatedly, there was no evidence of planning or premeditation. No evidence that anybody, you know, that he was scheming to shoot anybody. They were just partying and partied a lot and he got very emotional about the infidelity and bang, if you read the close of the government's argument, that was the government's theory. He's mad. He's upset. He's thinking about how he's been made to look like a fool by Megan and possibly Mr. Ben. And in the midst of this very emotional shot, bang. And if there are no further questions, I'll stop. Thank you. We thank both counsel for the helpful arguments. The case is not submitted at this time. Submission is deferred and we will issue an order with regard to supplemental briefing. And if as it plays out, either counsel needs to request additional time, so move and we'll deal with it. We understand the timelines you're dealing with. Thank you for your helpful arguments. The next case on the argument calendar for today, Roberts v. PayPal.
judges: Nelson, Clifton, Smith